**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

**RICHARD HINCHMAN,**

      **Plaintiff,**

**v.**                                                                             **Civil Action No. 2:10cv99
                                                                             (Judge Bailey)**

**DR. KAREN WINTERS,
VICKI GHEEN, HSA,
LINDA PERKINS,
KIM STUTTS, LPN,
WEXFORD HEALTH CARE,
WILLIAM FOX, Warden,**

      **Defendants.**

## REPORT AND RECOMMENDATION

### I.   Procedural History

The *pro se* plaintiff initiated this case on August 23, 2010, by filing a "Notice of Intent" in which he indicated that he was serving notice that he intended to sue Dr. Winters, Vicki Gheen, Linda Perkins, and Kim Stull[1]. The Notice was used to open a civil rights action on behalf of the plaintiff, and a Notice of Deficient Pleading was sent to the plaintiff on that same date. The Notice advised the plaintiff that he must file his complaint on the correct form which was enclosed for his use. In addition, the Notice advised the plaintiff that he must either pay the $350 filing fee or submit an Application to Proceed *in forma pauperis* with supporting documentation.

On August 30, 2010, the plaintiff submitted his complaint on the proper form but deleted

---

[1]Although the plaintiff named Kim Stutts as a defendant, subsequent pleadings by the defendants reveal that this individuals actual name is Kim Stull.

Linda Perkins and Kim Stutts as defendants and added Wexford Health Care[2]. In addition, the plaintiff paid the $350.00 filing fee. On September 1, 2010, the undersigned conducted a preliminary review of this matter and determined that liberally construed, the plaintiff's complaint alleged that the defendants had violated his rights under the Eighth Amendment by being deliberately indifferent to his serious medical needs. Accordingly, the undersigned determined that summary dismissal of the complaint was not warranted. Accordingly, because the plaintiff was not proceeding *in forma pauperis*, the Clerk was directed to issue 21 day summonses for the named defendants and forward those forms to the plaintiff. In addition the plaintiff was provided with notice that pursuant to Rule 4(m) of the Federal Rules of Civil Procedure, he must obtain service upon the defendants within 120 days after the filing of the complaint.

On September 10, 2010, the summons for Vicki Gheen, William Fox, Wexford Health Care, Kim Stull, and Linda Perkins were returned as executed. However, the summons for Karen Winters was returned as unexecuted.

On September 24, 2010, defendants Gheen, Perkins, Stull, and Wexford Health Sources filed their First Motion to Dismiss with supporting memorandum. On September 29, 2010, defendant Fox filed his First Motion to Dismiss with supporting memorandum. Because the plaintiff is proceeding without counsel in this case, the Court issued <u>Roseboro</u> Notices on September 30, 2010, advising the plaintiff of his right to file a response to the defendants' motions. On that same date, the plaintiff filed a Memorandum of Law objecting to defendants Gheens', Perkins', Stull's and Wexford Health Sources' Motion to Dismiss. On October 11, 2010, said defendants filed a Reply. On October 18,

---

[2]Although the plaintiff's complaint refers to Wexford Health Care, its official name is Wexford Health Sources, Inc.

2010, the plaintiff filed a Motion to Amend his Complaint. Responses were subsequently filed by the defendants. On November 17, 2010, the plaintiff's Motion to Amend was granted, and the Proposed Amended Complaint attached to Document 35 was order filed.[3] On November 29, 2010, defendant Fox filed a Motion to Dismiss the Amended Complaint, and on December 13, 2010, the plaintiff filed a Response. This case is therefore before the undersigned for a Report and Recommendation on the Motions to Dismiss.

## II.   Contentions of the Parties

### A.   The Complaint

The plaintiff's complaint is sparse, at best, providing the Court with no details surrounding his allegations. However, a review of all the various pleadings and attachments submitted by the plaintiff establish that he is a state prisoner currently incarcerated at the St. Marys Correctional Center. The plaintiff's chief allegation appears to be that he was denied medical treatment in late October or early November 2009, and as a consequence, he suffered a stroke resulting in loss of the use of two of his limbs. In addition, the plaintiff makes vague references to a stomach ailment for which he claims he is not receiving proper medication. Finally, it appears that me may have emphysema and is alleging that he is not receiving the treatment outlined in a document he downloaded from the Mayo Clinic. For relief, the plaintiff seeks $2,000,000 for "the loss of his limbs and the pain and suffering that I suffer each day and every day that I will have to suffer until I am dead and I need a lung transplant."

### B. Amended Complaint

---

[3]The allegations in the Amended Complaint are simply an amplification of the original allegations of the complaint and contain nothing new, except for a specific allegation aginst defendant Perkins.

In his amended complaint, the plaintiff alleges that defendant Gheen "made a bad call and is trying to cover it up." (Doc. 35-1, p. 2). With regard to defendant Perkins, the plaintiff alleges that she made unsympathetic comments and ignored him when he told her that he thought he had a stroke.

**B. First Motion to Dismiss by Defendants Gheen. Perkins, Stull, and Wexford Health Sources**

In their First Motion to Dismiss, these defendants first assert that Wexford Health Sources, Inc., is not a person for purposes of 42 U.S.C. § 1983, and there is no allegation of a policy or custom on its part to treat the plaintiff's medical needs with deliberate indifference. Next, they assert that the names of defendants Perkins and Stull only appear in the Notice of Intent, and the Complaint, itself, fails to list them as defendants and contains no allegations against them by name. Finally, they assert that the complaint fails to state a claim of deliberate indifference.

**C. First Motion to Dismiss by Warden Fox**

In support of his Motion to Dismiss, defendant Fox asserts that the plaintiff's complaint does not include any allegations against him, and in fact, his name does not appear in the complaint. In addition, defendant Fox asserts that even if the Court could construe a claim against him regarding medical treatment, as the Warden of St. Marys Correctional Center, he does not make medical decisions for inmates. Moreover, he asserts that the medical employees are employees of Wexford Health Sources, and he does not supervise or control the employees of Wexford. Finally, defendant Fox asserts that non-medical personnel, such as himself, may rely on the opinion of medical staff regarding the proper treatment of inmates.

**D. Second Motion to Dismiss by Defendants Gheen, Perkins, Stull, and Wexford Health Sources**

In support of their second Motion to Dismiss, these defendants assert that the Amended Complaint fails to make any allegations against Wexford Health Sources, Inc., Kim Stull, or Karen Winter, M.D., In addition, they assert that the Amended Complaint fails to state a claim upon which relief can be granted against any of the defendants because it fails to allege sufficient facts to support a claim of deliberate indifference.

**E. Motion to Dismiss Amended Complaint by William Fox**

In response to the plaintiff's Amended Complaint, defendant Fox reiterates the allegations made in his First Motion to Dismiss. In summary, he alleges that even if the plaintiff's allegations are taken as true, the plaintiff has failed to state any claim against defendant him.

### III. Standard of Review

**A. Motion to Dismiss**

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir.1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. Mylan Labs, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir.1993); see also Martin, 980 F.2d at 952.

The Federal Rules of Civil Procedure "require[ ] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.' " Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Courts long have cited the "rule that a

complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [a] claim which would entitle him to relief." Conley, 355 U.S. at 45-46. In Twombly, the United States Supreme Court noted that a complaint need not assert "detailed factual allegations," but must contain more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Conley, 550 U.S. at 555 (citations omitted). Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," id. (citations omitted), to one that is "plausible on its face," id. at 570, rather than merely "conceivable." Id. Therefore, in order for a complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." Bass v. E.I.DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir.2003) (citing Dickson v. Microsoft Corp., 309 F.3d 193, 213 (4th Cir.2002); Iodice v. United States, 289 F.3d 279, 281 (4th Cir.2002)). In so doing, the complaint must meet a "plausibility" standard, instituted by the Supreme Court in Ashcroft v. Iqbal, where it held that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). Thus, a well-pleaded complaint must offer more than "a sheer possibility that a defendant has acted unlawfully" in order to meet the plausibility standard and survive dismissal for failure to state a claim. Id.

### IV. Analysis

**A. Dr. Karen Winter**

As previously noted, the plaintiff paid the full $350 filing fee, and therefore, was not entitled to court ordered service of process by the United States Marshal Service. Instead, the plaintiff was responsible for obtaining service of process on his own, and on September 1, 2010, summonses were

issued to the plaintiff for service on the defendants. In addition, the court made the plaintiff aware of the requirements of Rule 4(m) of the Federal Rules of Civil Procedure which require that service be made upon a defendant within 120 days after filing of the complaint. Because Dr. Winters summons came back unexecuted, and more than 120 days had passed since the complaint was filed, an Order was entered on March 23, 2011, directing the Clerk to issue another 21 day summons for Karen Winter, M.D., and forward the form to the plaintiff. The plaintiff was directed to provide the court with certification of service by filing documents which reflect proper, completed service on said defendant. The plaintiff was warned that failure to provide proof of service with thirty (30) days would result in dismissal of the complaint as it relates to Dr. Winters.

To date, the plaintiff has failed to provide proof of service, and on April 21, 2011, he filed a letter indicating that he would pay the costs if the court would forward the summons to Dr. Winters. While the undersigned is sympathetic to the plight of *pro se* litigants, the court not only cannot help the plaintiff with service, it does not have any information regarding Dr. Winters' place of residence or employment. Accordingly, because the plaintiff has failed to perfect service within the mandated period of time, the complaint, as it relates to Dr. Winters, should be dismissed. Additionally, even if the plaintiff had perfected service on Dr. Winters, she would still be due to be dismissed from the case.

Pursuant to Rule 8(a) of the Federal Rules of Civil Procedure, "[a] pleading which sets forth a claim for relief, whether an original claim, counter-claim, cross-claim, or third-party claim, shall contain (1) a short and plain statement of the grounds upon which the court's jurisdiction depends . . . (2) a short and plain statement of the claim *showing that the pleader is entitled to relief*, and (3) a demand for judgment for the relief the pleader seeks." (Emphasis added). "And, although the

pleading requirements of Rule 8(a) are very liberal, more detail often is required than the bald statement by plaintiff that he has a valid claim of some type against defendant." <u>Migdal v. Rowe Price-Fleming International, Inc.</u>, 248 F.3d 321, 326 (4th Cir. 2001) (citation and internal quotations omitted).

Moreover, liability in a civil rights case is "personal, based upon each defendant's own constitutional violations." <u>Trulock v. Freeh</u>, 275 F.3d 391, 402 (4th Cir.2001)(internal citation omitted). Therefore, in order to establish liability, the plaintiff must specify the acts taken by each defendant which violate his constitutional rights. <u>See</u> <u>Wright v. Smith</u>, 21 F.3d 496, 501 (2d Cir. 1994); <u>Colburn v. Upper Darby Township</u>, 838 F.2d 663, 666 (3rd Cir. 1988). Some sort of personal involvement on the part of the defendant and a causal connection to the harm alleged must be shown. <u>See</u> <u>Zatler v. Wainwright</u>, 802 F.2d 397, 401 (11th Cir. 1986). *Respondeat superior* cannot form the basis of a claim for a violation of a constitutional right in a <u>Bivens</u> case. <u>Rizzo v. Good</u>, 423 U.S. 362 (1976). Here, the plaintiff merely names Dr. Winters in the style of the case and never mentions her in the body of the complaint. Accordingly, the plaintiff has failed to state any claim, let alone a valid claim, against Dr. Winters.

**B. <u>Kim Stull</u>**

As noted in their Motions to Dismiss filed by defendants Gheen, Perkins, Stull, and Wexford Health Sources on September 24, 2010 and November 24, 2010, nowhere in either the complaint or amended complaint does the plaintiff name Kim Stull in the body of his allegations. Moreover, in his Motion for Leave to File an Amended Complaint, the plaintiff noted that "he needs to withdraw Ms. Stull or Ms. Stutts because she did assist inmates every way she can and the legal assistant that had first filed his petition [petition] had an argument previously with Ms. Stull or Ms. Stutts and

refused to inform me as to every thing stated on the petition [sic], knowing that I cannot read due to severity of my eye condition." (Doc. 30, p. 3). While the plaintiff did not address this issue in his Amended Complaint, it is apparent that Ms. Stulls should be dismissed from this case either because there are no allegations against her or because the plaintiff indicated his desire to do so.

### C. Warden Fox

In order to establish personal liability against a defendant in a § 1983 action, the defendant must be personally involved in the alleged wrong(s); liability cannot be predicated solely under *respondeat superior*. See Monell v. Department of Social Services, 436 U.S. 658 (1978); Vinnedge v. Gibbs, 550 F.2d 926, 928 (4th Cir. 1977). The plaintiff does not allege any personal involvement with his medical care by Warden Fox. Instead, he appears to allege that he is responsible for his staff and their actions.[4] When a supervisor is not personally involved in the alleged wrongdoing, he may be liable under § 1983 if the subordinate acted pursuant to an official policy or custom for which he is responsible, see Fisher v. Washington Metropolitan Area Transit Authority, 690 F.2d 1113 (4th Cir. 1982); Orum v. Haines, 68 F. Supp.2d 726 (D.D. W.Va. 1999), or the following elements are established: "(1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a 'pervasive and unreasonable risk' of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to that knowledge was so inadequate as to show 'deliberate indifference to or tacit authorization of the alleged offensive practices,' and (3) there was an 'affirmative causal link' between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff."

---

[4]In truth, the complaint and amended complaint contain no specific allegation against Warden Fox, but instead, simply name him as a defendant. However, in his response to Warden Fox's Motion to Dismiss the Amended Complaint, the plaintiff states that as the Warden of St. Marys, defendant Fox is legally responsible for the operation of the facility and the welfare of all the inmates...(Doc. 55, p. 3)

Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir.), *cert. denied,* 513 U.S. 813 (1994).

"Establishing a 'pervasive' and 'unreasonable' risk of harm requires evidence that the conduct is widespread, or at least has been used on several different occasions and that the conduct engaged in by the subordinate poses an unreasonable risk of harm or constitutional injury." Id. "A plaintiff may establish deliberate indifference by demonstrating a supervisor's 'continued inaction in the face of documented widespread abuses.'" Id.

The plaintiff makes no allegations in his complaint which reveals the presence of the required elements for supervisory liability against Warden Fox. Furthermore, the undersigned notes that the Fourth Circuit has held that non-medical personal may rely on the opinion of medical staff regarding the proper treatment of inmates. Miltier v. Beorn, 896 F.2d 848 (4th Cir. 1990). Thus, Warden Fox could rely on the decision by medical staff with respect to the plaintiff's care. Consequently, the undersigned finds that the plaintiff has failed to state a claim against Warden Fox,[5] and he should be dismissed as a defendant in this action.

**D. Wexford Medical Sources, Inc.**

The plaintiff alleges that the defendant(s) have deprived him of his rights and raises a claim under 42 U.S.C. § 1983 which provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be

---

[5]To the extent that the plaintiff may be asserting that Warden Fox was deliberately indifferent to his needs by denying his administrative grievances, that claim is without merit because that is not the type of personal involvement required to state a claim. See Paige v. Kuprec, 2003 W.L. 23274357 *1 (D.Md. March 31, 2003).

granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

Therefore, in order to state a claim under 42 U.S.C. § 1983, the plaintiff must demonstrate that a person acting under color of state law deprived him of the rights guaranteed by the Constitution or federal laws. Rendall-Baker v. Kohn, 547 U.S. 830, 838 (1982). However, it is clear that Wexford is not a "person" for purposes of 42 U.S.C. § 1983, and there are no allegations against Wexford involving policies or customs of deliberate indifference. Accordingly respondent superior does apply, and Wexford is due to be dismissed as a defendant.

### E. Vicki Gheen and Linda Perkins

The plaintiff alleges that he was denied any medical assistance until after he suffered a stroke. He also alleges that suffered major nerve damage due to the "negligence of the defendants. Vicki Gheen is the Health Service Administrator at St. Marys Correctional Center, and Linda Perkins apparently is an RN employed by Wexford Health Sources and assigned to St. Marys. Accordingly, of the defendants named in the plaintiff's complaint, it would appear that these allegations are aimed at defendants Gheen and Perkins.

On April 26, 2010, the plaintiff filed a grievance with his Unit Manager complaining that at the end of October or early November 2009, he was admitted to the infirmary with a breathing problem. The grievance continues that during his stay in the infirmary, his health continued to decline to the point where he believed he had suffered a stroke and notified "staff" of the same. The plaintiff complained that he was never examined, and to his knowledge, Dr. Winters was not notified. The grievance continues that later in the evening, the nursing shift changed, and he was seen by another nurse. The plaintiff maintains that upon her examination, the EMTs were notified, and he was taken to St. Josephs, admitted, and diagnosed as having suffered a stroke. The grievance notes that he remained in St. Josephs for four days before being discharged and sent to the infirmary at the Mount

11

Olive Correctional Center, where he remained until April 22, 2010.

In response to the grievance, Vicki Gheen noted that the plaintiff was admitted to Medical with complaints of shortness of breath on October 22, 2009. He was placed in observation and no neurological deficits were noted. On October 23, 2009, the plaintiff complained of numbness of his right arm and foot. Again, no neurological deficit was noted. On October 23, 2009, at 5:18 p.m., the plaintiff was found on the floor, and he was noted to be flaccid on his right side. The physician was notified, and the plaintiff was transferred to the hospital for evaluation.[6](Doc. 1-2, p. 2).

To state a claim under the Eighth Amendment for ineffective medical assistance, the plaintiff must show that the defendant acted with deliberate indifference to his serious medical needs. Estelle v. Gamble, 429 U.S. 97, 104 (1976). To succeed on an Eighth Amendment cruel and unusual punishment claim, a prisoner must prove: (1) that objectively the deprivation of a basic human need was "sufficiently serious," and (2) that subjectively the prison official acted with a "sufficiently culpable state of mind." Wilson v. Seiter, 501 U.S. 294, 298 (1991).

A serious medical condition is one that has been diagnosed by a physician as mandating treatment or that is so obvious that even a lay person would recognize the need for a doctor's attention. Gaudreault v. Municipality of Salem, Mass., 923 F.2d 203, 208 (1st Cir. 1990), cert. denied, 500 U.S. 956 (1991). A medical condition is also serious if a delay in treatment causes a life-long handicap or permanent loss. Monmouth County Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 347 (3rd Cir. 1987), cert. denied, 486 U.S. 1006 (1988).[7]

---

[6]The undersigned notes that the dates listed by Ms. Gheen indicate the events occurred in 2010. However, that is clearly a typographical error given the plaintiff's allegations and the date on Ms. Gheens' memo.

[7] The following are examples of what does or does not constitute a serious injury. A rotator cuff injury is not a serious medical condition. Webb v. Prison Health Services, 1997 WL 298403 (D. Kansas 1997). A foot condition involving a fracture fragment, bone cyst and degenerative arthritis is not

The subjective component of a cruel and unusual punishment claim is satisfied by showing that the prison official acted with deliberate indifference. Wilson, 501 U.S. at 303. A finding of deliberate indifference requires more than a showing of negligence. Farmer v. Brennan, 511 U.S. 825, 835 (1994). A prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. A prison official is not liable if he "knew the underlying facts but believed (albeit unsoundly) that the risk to which the fact gave rise was insubstantial of nonexistent." *Id.* at 844.

"To establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment, [or lack thereof], must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990). A mere disagreement between the inmate and the prison's medical staff as to the inmate's diagnosis or course of treatment does not support a claim of cruel and unusual punishment unless exceptional circumstances exist. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985). A constitutional violation is established when "government officials show deliberate indifference to those medical needs which have been diagnosed as mandating treatment, conditions which obviously require medical attention, conditions which significantly affect an individual's daily life activities, or conditions which cause pain, discomfort or a threat to good health." See Morales Feliciano v. Calderon Serra, 300 F.Supp.2d 321, 341 (D.P.R. 2004) (citing Brock v. Wright, 315 F.3d 158, 162 (2d Cir. 2003)).

Here, the plaintiff's allegations do not support a finding of deliberate indifference. The

---

sufficiently serious. Veloz v. New York, 35 F.Supp.2d 305, 312 (S.D.N.Y. 1999). Conversely, a broken jaw is a serious medical condition. Brice v. Virginia Beach Correctional Center, 58 F. 3d 101 (4th Cir. 1995); a detached retina is a serious medical condition. Browning v. Snead, 886 F. Supp. 547 (S.D. W. Va. 1995). And, arthritis is a serious medical condition because the condition causes chronic pain and affects the prisoner's daily activities. Finley v. Trent, 955 F. Supp. 642 (N.D. W.Va. 1997)

plaintiff's grievance acknowledges that he was placed in the infirmary with breathing complaints. In addition, it establishes that he was transported to the hospital as soon as it was apparent that he had suffered a stroke. Although the nurse, presumably Linda Perkins, may have missed the signs that the plaintiff was suffering a stroke, her actions amount to negligence, not deliberate indifference.

To the extent that the plaintiff may be seeking to establish a medical negligence claim, he must comply with West Virginia law and establish that:

> (a) the health care provider failed to exercise that degree of care, skill, and learning required or expected of a reasonable, prudent health care provider in the profession or class to which the health care provider belongs acting in the same or similar circumstances; and (b) such failure was a proximate cause of the injury or death.

W.Va. Code § 55-7B-3. When a medical negligence claim involves an assessment of whether or not the plaintiff was properly diagnosed and treated and/or whether the health care provider was the proximate cause of the plaintiff's injuries, expert testimony is required. Banfi v. American Hospital for Rehabilitation, 529 S.E.2d 600, 605-606 (2000).

Additionally, under West Virginia law, certain requirements must be met before a health care provider may be sued. W.Va. Code §55-7B-6. This section provides in pertinent part:

> **§ 55-7B-6. Prerequisites for filing an action against a health care provider; procedures; sanctions**
> (a) Notwithstanding any other provision of this code, no person may file a medical professional liability action against any health care provider without complying with the provisions of this section.
> (b) At least thirty days prior to the filing of a medical professional liability action against a health care provider, the claimant shall serve by certified mail, return receipt requested, a notice of claim on each health care provider the claimant will join in litigation. The notice of claim shall include a statement of the theory or theories of liability upon which a cause of action may be based, and a list of all health care providers and health care facilities to whom notices of claim are being sent, together with a screening certificate of merit. The screening certificate of merit shall be executed under oath by a health care provider qualified as an expert under the West Virginia rules of evidence and shall state with particularity: (1) The expert's familiarity with the applicable standard of care in issue; (2) the expert's qualifications; (3) the expert's opinion

as to how the applicable standard of care was breached; and (4) the expert's opinion as to how the breach of the applicable standard of care resulted in injury or death. A separate screening certificate of merit must be provided for each health care provider against whom a claim is asserted. The person signing the screening certificate of merit shall have no financial interest in the underlying claim, but may participate as an expert witness in any judicial proceeding. Nothing in this subsection may be construed to limit the application of rule 15 of the rules of civil procedure.

This Court previously held that compliance with W.Va. Code §55-7B-6 is mandatory prior to filing suit in federal court. See Stanley v. United States, 321 F.Supp.2d 805, 806-807 (N.D.W.Va. 2004).[8]

With regard to the appropriate standard of care, plaintiff has completely failed to sustain his burden of proof. Plaintiff does not assert, much less establish, the standard of care for the diagnosis of a stroke. Under the circumstances of this case, plaintiff would be required to produce the medical opinion of a qualified health care provider in order to raise any genuine issue of material fact with respect to the defendant(s)' breach of the duty of care. Moreover, there is nothing in the complaint which reveals that the plaintiff has met the requirements of W.Va. Code §55-7B-6. Accordingly, even if this court has supplemental jurisdiction over the plaintiff's potential state law claims for medical malpractice, summary dismissal is appropriate.

## V. Recommendation

For the reasons stated, the undersigned recommends that the Motions to Dismiss (Docs. 18, 21, 49 and 52) **be GRANTED**, the plaintiff's complaint (dckt. 1) and amended complaint (dckt. 44) be **DISMISSED with prejudice** for failure to state a claim upon which relief can be granted, and the plaintiff's Motion for Appointment of Counsel (Doc. 56) be **DENIED**.

---

[8] In Stanley, the plaintiff brought suit against the United States alleging that the United States, acting through its employee healthcare providers, was negligent and deviated from the "standards of medical care" causing him injury.

Within **fourteen (14) days** after being served with a copy of this Report and Recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections shall also be submitted to the Honorable John Preston Bailey, United States District Judge. Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk is directed to send a copy of this Report and Recommendation to the *pro se* plaintiff by certified mail, return receipt requested, to his last known address as shown on the docket, and to counsel of record via electronic means.

DATED: June 6, 2011

      /s/ James E. Seibert
     JAMES E. SEIBERT
     UNITED STATES MAGISTRATE JUDGE